**Jon F. MADISON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00962–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 6, 1992.

W.E. Herman III, Humble, for appellant.

John B. Holmes, Jr., Dist. Atty., Mary Lou Keel, Asst. Dist. Atty., for appellee.

Before TREVATHAN, C.J., and DUNN and DUGGAN, JJ.

## OPINION

DUNN, Justice.

Appellant was convicted by a jury of delivery of cocaine weighing less than 28 grams, and the jury assessed appellant's punishment at confinement for 40 years, based on an enhancement paragraph. We affirm.

In five points of error, appellant complains that the evidence was legally and factually insufficient to sustain his conviction and that the trial court erred in instructing the jury that they could consider good conduct time and parole in determining his sentence.

### Summary of the Facts

Appellant was charged with delivery of cocaine. The offense occurred on April 16, 1990. Officer Dennis G. Davis testified at trial that on that date, he was working as an undercover officer. A raid team was stationed several blocks away from him.

Davis drove his car into a parking lot near a grocery store, parked and exited the vehicle, and approached a black female. Davis asked her where he could purchase a "twenty." The female directed him to the grocery store.

He went into the store and observed appellant standing next to another black male. Davis asked appellant for a "twenty." Appellant told Davis to step back into the parking lot, where appellant produced a small box with several rocks. The appellant handed Davis two rocks, and Davis gave appellant a twenty dollar bill.

Davis then got into his car, left the area, and advised the raid team about appellant's description. The raid team arrested appellant.

### Legal Sufficiency of the Evidence

In his first point of error, appellant contends that the evidence is legally insufficient to support his conviction because the State did not prove that the substance he delivered was the same substance tested by the chemist and identified as cocaine. In other words, appellant asserts that the State did not prove chain of custody of the cocaine.

In reviewing the sufficiency of evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989). This Court reviews the entire body of evidence to determine whether the State proved every element of the alleged crime beyond a reasonable doubt. *Id.* at 239. The sufficiency of the evidence is a question of law. If there is evidence that establishes guilt, beyond a reasonable doubt, and if the trier of fact believes that evidence, this Court is not in a position to reverse the judgment on sufficiency of evidence grounds. *Glass v. State*, 761 S.W.2d 806, 807 (Tex.App.—Houston [1st Dist.] 1988, no pet.).

Appellant's specific complaint about the chain of custody is that "Davis never testified that the substance he received from the appellant was placed in the envelope or baggie marked State's Exhibit Number 2." Our review of the evidence demonstrates that Davis identified the contents of State's exhibit two as the cocaine he purchased from appellant.

Davis, an officer for the Houston Police Department, testified that he recognized State's exhibit two, a baggie containing white rocks, because, at the time of the offense, he initialed the baggie and wrote the date of the offense on it. After field testing the contents of State's exhibit two, Davis gave it to Officer Cameron, his sergeant.

Davis' exact testimony pertinent to the chain of custody was:

Q. Officer, I'm going to show you what's been marked as State Exhibit No. 1 and I'm going to open it and I'm going to take out from inside State Exhibit No. 1, an envelope, a plastic bag that's been marked as State Exhibit No. 2. And inside that bag, in the contents of that bag is a smaller baggie as part of State Exhibit No. 2 that has some white rocks

in it. Do you recognize the smaller baggie there?

A. Yes, ma'am, I do.

Q. How do you recognize that?

A. My initials on the bag and the date of the offense.

Q. When did you put your initials on the bag?

A. On the same day of the offense.

....

Q. Were the contents or are the contents—when you put them in the baggie in that's been marked as State's Exhibit No. 2 were the contents, the little rocks, clearly visible.

....

A. Yes, ma'am.

....

Q. Officer, after you recovered State Exhibit No. 2 and its contents, what did you do with it after you field-tested it?

A. I placed it in a small plastic baggie, sealed it with my initials on the baggie and turned it over to Officer Cameron.

It is apparent from Davis' testimony that he placed the cocaine into State's exhibit two and gave it to Officer Cameron.[1]

■ As long as there is no allegation of tampering, objections concerning chain of custody go to the weight rather than the admissibility of evidence. *Mays v. State*, 726 S.W.2d 937, 952 (Tex.Crim.App. [Panel Op.] 1986); *Parr v. State*, 606 S.W.2d 928, 930 (Tex.Crim.App.1980); *Belcher v. State*, 661 S.W.2d 230, 233 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). When the evidence shows that drugs were submitted to the laboratory without a break in the chain of custody, as happened in the present case, the jury is free to weigh the evidence as it sees fit. *See Medellin v. State*, 617 S.W.2d 229, 232 (Tex.Crim.App. [Panel Op.] 1981).

This Court may not sit as a thirteenth juror and disregard or reweigh the evi-

dence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). In the present case, there was no break in the chain of custody and no allegation of tampering. We overrule appellant's first point of error.

### Factual Sufficiency Standard is Inapplicable

In his second point of error, appellant argues that the evidence is factually insufficient because of the same chain of custody argument that appellant raised in his first point of error. After reviewing the evidence and holding in point of error one that the evidence regarding chain of custody was legally sufficient to support appellant's conviction, we overrule point of error two.

### Jury Instruction on Good Time and Parole

■ In his third point of error, appellant contends that the trial court erred in instructing the jury in accordance with the mandatory language of section 4, article 37.07 of the Texas Code of Criminal Procedure. This section provides:

In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense of which the jury has found the defendant guilty is listed in Section 3g(a)(1), Article 42.12, or if the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, of this code, unless the defendant has been convicted of a capital felony the court *shall* charge the jury in writing as follows:

"Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work as-

---

**1.** The remaining links in the chain of custody, about which appellant does not complain, were established through the testimony of Officers Cameron and Trejo. Cameron testified that he received State's exhibit one from Davis, sealed it in State's exhibit one, and gave it to Trejo. Trejo testified that he put State's exhibit one, still sealed, into the narcotics lockbox. Claudia Busby, the chemist, testified that she received State's exhibit one, still sealed, from her supervisor, Judy Nohavitza, who recovered it from the narcotics lockbox. State's exhibit two was inside of State's exhibit one.

signments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed or fifteen years, whichever is less, with consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant, if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You *may consider* the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant."

TEX.CODE CRIM.P.ANN. art. 37.07, § 4(a) (Vernon Supp.1992) (emphasis added). The charge of the trial court was given in accordance with the above language.[2] Appellant maintains that the instruction required by article 37.07 exceeds the scope of authority granted by section 11(a) of article IV of the Texas Constitution, because article 37.07 uses the word "consider," but section 11(a) of article IV uses the word "inform." Article IV, section 11(a) provides:

> The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws and laws that *require or permit courts to inform juries about the effect of good conduct time and eligibility for parole* or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense.

TEX.CONST. art. IV, § 11(a) (emphasis added). This Court notes that it would not be possible for a jury to "consider" good time credit or eligibility for parole if the jury were not "informed" of the same. The constitutional language that enables a jury to be informed of the effects of good conduct time and eligibility for parole also enables a jury to consider this information.

---

**2.** The relevant language in the charge provided:
Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed or fifteen years,

whichever is less, with consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant, if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Under the interpretation urged by appellant, a jury could be informed about, but would be prohibited from considering good conduct time and eligibility for parole. We do not believe such a result was contemplated by the people of this State.

Appellant relies on portions of the plurality opinion in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988), to support his position. The Court of Criminal Appeals declared former article 37.07 unconstitutional in the *Rose* case, because the article allegedly violated the doctrine of separation of powers. *Rose*, 752 S.W.2d at 534.[3] In response, the Texas Legislature amended section 11(a) of the constitution and reenacted article 37.07.[4]

A jury charge that includes a parole instruction is no longer unconstitutional. The *Rose* holding is inapplicable to cases tried after the effective date of the amendment of section 11(a), November 7, 1989. *Edwards v. State*, 807 S.W.2d 338, 340 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Broussard v. State*, 809 S.W.2d 556, 557–58 (Tex.App.—Dallas 1991, pet. ref'd); *Johnson v. State*, 800 S.W.2d 563, 567 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). The trial of the present case was in October 1990; therefore, the court was authorized under article 37.07, by way of constitutional amendment, to instruct the jury on the law of good time and parole.

■ Article 37.07 requires the court to inform the jury of the effect of good conduct time and parole and instructs them not to consider how those laws would be applied to the case under consideration. The general instruction that the jury may consider good time and parole merely acknowledges that the jury was informed of the existence and operation of these laws. *Edwards*, 807 S.W.2d at 341. Such a general instruction was included in the charge given the jury in this case and did not offend the constitution. We overrule point of error three.

■ In points of error four and five, appellant asserts that section 11(a) violates the due course of law provisions and the separation of powers doctrine of the Texas Constitution. In support of his position, appellant again relies on *Rose*, 752 S.W.2d at 529, and argues that the Court of Criminal Appeals' definitions of due course of law and the separation of powers cannot be changed even by constitutional amendment.[5]

The due course of law provisions are set forth in sections 13 and 19 of the Texas Constitution. Section 13 of the constitution provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

TEX.CONST. art. I, § 13.

Section 19 states:

> With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason.

TEX.CONST. art. IV, § 11 (1983, amended 1989).

**3.** Article IV, section 11(a) formerly stated:

> The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws.
>
> In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures. The Governor shall the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days; and he shall have power to revoke conditional pardons.

**4.** Act of May 17, 1989, 71st Leg., R.S., ch. 103, § 1, 1989 Tex.Gen.Laws 442, 442–43.

**5.** In *Rose*, the Court of Criminal Appeals stated:

> The legislative mandate in Article 37.07, section 4(a), *supra*, is an attempt by the Legislative Department to direct the Judicial Department to interfere with exercise of powers of the Board of Pardons in the Executive Department and, as such it offends the separation of powers doctrine in Article II, section 1. Accordingly, we hold that Article 37.07, section 4(a) and the instruction required by it are unconstitutional.

*Rose*, 752 S.W.2d at 534.

**208** 

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of law of the land.

TEX.CONST. art. I, § 19.

██ In construing a constitution, all of its provisions must be examined. *Vinson v. Burgess,* 773 S.W.2d 263, 265 (Tex.1989); *Clapp v. State,* 639 S.W.2d 949, 951 (Tex. Crim.App.1982). If one section expresses a general intention to do a particular thing, and another section expresses a particular intention incompatible with the general intention, the particular intention is in the nature of an exception. *Harris County v. Sheppard,* 156 Tex. 18, 291 S.W.2d 721, 726 (1956). The particular intention expressed in section 11(a), therefore, controls over the general constitutional provisions relied upon by appellant.

██ Further, a constitutional amendment becomes as much a part of the organic law as if it had been originally incorporated in the constitution. *Purcell v. Lindsey,* 158 Tex. 541, 314 S.W.2d 283, 284 (1958). Any provisions of the constitution previously existing that are in conflict with the amendment must yield to the amendment. *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 152 (1942).

██ An accused is not denied due course of law by virtue of a requirement that the jury be instructed on the law of good time and parole. The jury was allowed merely to consider the existence of good time and parole and was specifically precluded from calculating or considering the extent or the manner in which good conduct time or parole applied to appellant. *Bruno v. State,* 812 S.W.2d 56 (Tex.App.—Houston [14th Dist.] 1991, pet. granted); *Oakley v. State,* 807 S.W.2d 378, 381 (Tex.App.—Houston [14th Dist.] 1991, pet. granted).

Appellant's reliance on *Faulk v. Buena Vista Burial Park Association,* 152 S.W.2d 891 (Tex.1941), is misplaced. The *Faulk* case merely held that exercise of the

State's police power was limited by the bill of rights.[6] Appellant's reliance on *Murphy v. Phillips,* 63 S.W.2d 404 (Tex.Civ.App.—San Antonio 1933, appeal dism'd), is similarly misplaced, since the statute found unconstitutional in that case was not passed pursuant to specific constitutional authority.

██ We also find unavailing appellant's claim that the amendment to section 11(a) did not remedy the separation of powers problem deemed controlling by *Rose.* Under the constitutional amendment to article IV, section 11, the judiciary is expressly empowered to inform juries about the effect of good conduct time and eligibility for parole. *Edwards,* 807 S.W.2d at 341. As such, article 37.07 withstands constitutional scrutiny.

Article 37.07, section 4 is expressly authorized through article IV, section 11(a), by virtue of constitutional amendment, mandated by the people of Texas. *Marks v. State,* 815 S.W.2d 817 (Tex.App.—Eastland 1991, pet granted). We overrule points of error four and five.

The judgment of the trial court is affirmed.

6. In *Faulk,* the defendants were enjoined, pursuant to statute, from establishing a cemetery within the city limits of Brownsville or within a certain distance from the city limits. The supreme court upheld the injunction and found the statutes to be constitutional.